E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
BENJAMIN R. BARRON (Cal. Bar No. 257094)
Assistant United States Attorney
Chief, Santa Ana Branch Office
California State Bar No. 257094
    8000 United States Courthouse
    411 West Fourth Street
    Santa Ana, California 92701
    Telephone: (714) 338-3536
    Facsimile: (714) 338-3561
    Email: Ben.Barron@usdoj.gov
NIALL M. O'DONNELL
Assistant Deputy Chief
United States Department of Justice
Fraud Section, Criminal Division
    300 N. Los Angeles St., Suite 2001
    Los Angeles, California 90012
    Telephone: (202) 257-3295
    E-mail: niall.odonnell@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**FILED**
CLERK, U.S. DISTRICT COURT
06/10/2024
CENTRAL DISTRICT OF CALIFORNIA
BY: _____ IGU _____ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br>          v.<br><br>MONICA BONIADI,<br><br>      Defendant. | No. 8:24-cr-00073-JVS<br><br>PLEA AGREEMENT FOR DEFENDANT<br>MONICA BONIADI |

    1.   This constitutes the plea agreement between defendant MONICA BONIADI ("defendant") and the United States Attorney's Office for the Central District of California (the "USAO") and the Fraud Section of the Criminal Division of the United States Department of Justice (collectively, "the United States") in the investigation of health care fraud in the context of defendant BONIADI's dental

1  practice.  This agreement is limited to the United States and cannot

2  bind any other federal, state, local, or foreign prosecuting,

3  enforcement, administrative, or regulatory authorities.

4  <u>DEFENDANT'S OBLIGATIONS</u>

5      2.  Defendant agrees to:

6          a.  Give up the right to indictment by a grand jury and,

7  at the earliest opportunity requested by the United States and

8  provided by the Court, appear and plead guilty to a single-count

9  information in the form attached to this agreement as Exhibit A or a

10  substantially similar form, which charges defendant with health care

11  fraud, in violation of 18 U.S.C. § 1347.

12          b.  Not contest facts agreed to in this agreement.

13          c.  Abide by all agreements regarding sentencing contained

14  in this agreement.

15          d.  Appear for all court appearances, surrender as ordered

16  for service of sentence, obey all conditions of any bond, and obey

17  any other ongoing court order in this matter.

18          e.  Not commit any crime; however, offenses that would be

19  excluded for sentencing purposes under United States Sentencing

20  Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not

21  within the scope of this agreement.

22          f.  Be truthful at all times with the United States

23  Probation and Pretrial Services Office and the Court.

24          g.  Pay the applicable special assessment at or before the

25  time of sentencing unless defendant has demonstrated a lack of

26  ability to pay such assessments.

27          h.  At or before the time of sentencing, make a

28  prejudgment payment by delivering a certified check or money order to

2

1  the Fiscal Clerk of the Court in the amount of $142,677.85 to be

2  applied to satisfy defendant's anticipated restitution obligation.

3  Defendant agrees to sign a stipulation for an order directing the

4  clerk of the court to accept any prejudgment payment.  Payments may

5  be made to the Clerk, United States District Court, Fiscal

6  Department, 255 East Temple Street, Room 1178, Los Angeles,

7  California 90012.

8          i.    Defendant understands and acknowledges that as a

9  result of pleading guilty pursuant to this agreement, defendant will

10  be excluded from Medicare, Medicaid, and all Federal health care

11  programs.  Defendant agrees to complete and execute all necessary

12  documents provided by the United States Department of Health and

13  Human Services, or any other department or agency of the federal

14  government, to effectuate this exclusion within 60 days of receiving

15  the documents.  This exclusion will not affect defendant's right to

16  apply for and receive benefits as a beneficiary under any Federal

17  health care program, including Medicare and Medicaid.

18                    THE UNITED STATES' OBLIGATIONS

19       3.   The United States agrees to:

20          a.    Not contest facts agreed to in this agreement.

21          b.    Abide by all agreements regarding sentencing contained

22  in this agreement.

23          c.    At the time of sentencing, provided that defendant

24  demonstrates an acceptance of responsibility for the offense up to

25  and including the time of sentencing, recommend a two-level reduction

26  in the applicable Sentencing Guidelines offense level, pursuant to

27  U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an

28  additional one-level reduction if available under that section.

1          d.    Recommend that defendant be sentenced to a term of

2    imprisonment no higher than the low end of the applicable Sentencing

3    Guidelines range, provided that the offense level used by the Court

4    to determine that range is 11 or higher.  For purposes of this

5    agreement, the low end of the Sentencing Guidelines range is that

6    defined by the Sentencing Table in U.S.S.G. Chapter 5, Part A,

7    without regard to reductions in the term of imprisonment that may be

8    permissible through the substitution of community confinement or home

9    detention as a result of the offense level falling within Zone B or

10   Zone C of the Sentencing Table.

11         e.    Except for criminal tax violations (including

12   conspiracy to commit such violations chargeable under 18 U.S.C.

13   § 371), not further criminally prosecute defendant for violations of

14   18 U.S.C. §§ 1028A, 1035, 1341, 1343, 1347, 1349, 1956, or 1957

15   arising out of (i) defendant's conduct described in the agreed-to

16   factual basis set forth in paragraph 10 below, or (ii) otherwise

17   arising out of defendant's billings to dental insurance providers

18   during the period of 2011 through 2018.  Defendant understands that

19   the United States is free to criminally prosecute defendant for any

20   other unlawful past conduct or any unlawful conduct that occurs after

21   the date of this agreement.  Defendant agrees that at the time of

22   sentencing the Court may consider the uncharged conduct in

23   determining the applicable Sentencing Guidelines range, the propriety

24   and extent of any departure from that range, and the sentence to be

25   imposed after consideration of the Sentencing Guidelines and all

26   other relevant factors under 18 U.S.C. § 3553(a).

27

28

1

## NATURE OF THE OFFENSE

2      4.    Defendant understands that for defendant to be guilty of
3  the crime charged in the single-count information, that is, health
4  care fraud, in violation of Title 18, United States Code, Section
5  1347, the following must be true: (1) the defendant knowingly and
6  willfully executed a scheme or plan to defraud a health care benefit
7  program, or a scheme or plan to obtain money or property owned by or
8  under the custody or control of a health care benefit program by
9  means of material false or fraudulent pretenses, representations, or
10  promises; (2) the defendant acted with the intent to defraud; (3) the
11  victim of the fraud was a health care benefit program; and (4) the
12  scheme or plan was executed in connection with the delivery of or
13  payment for health care benefits or services.

14

## PENALTIES AND RESTITUTION

15      5.    Defendant understands that the statutory maximum sentence
16  that the Court can impose for a violation of Title 18, United States
17  Code, Section 1347, is: 10 years' imprisonment; a three-year period
18  of supervised release; a fine of $250,000 or twice the gross gain or
19  gross loss resulting from the offense, whichever is greatest; and a
20  mandatory special assessment of $100.

21      6.    Defendant understands that defendant will be required to
22  pay full restitution to the victim(s) of the offense to which
23  defendant is pleading guilty.  Defendant agrees that, in return for
24  the United States' compliance with its obligations under this
25  agreement, the Court may order restitution to persons other than the
26  victim(s) of the offense to which defendant is pleading guilty and in
27  amounts greater than those alleged in the count to which defendant is
28  pleading guilty.  In particular, defendant agrees that the Court may

order restitution to any victim of any of the following for any losses suffered by that victim as a result: (a) any relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with the offense to which defendant is pleading guilty; and (b) any charge(s) not prosecuted pursuant to this agreement as well as all relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with those charge(s). The parties currently believe that the applicable amount of restitution is approximately $142,677.85, but recognize and agree that this amount could change based on facts that come to the attention of the parties prior to sentencing.

7. Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements. Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

8. Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that she is pleading guilty to a felony and that it is a federal crime for a convicted felon to possess a firearm or ammunition. Defendant understands that the conviction in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation,

parole, or supervised release in another case and suspension or revocation of a professional license. Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty plea.

9. Defendant and her counsel have discussed the fact that, and defendant understands that, if defendant is not a United States citizen, the conviction in this case makes it practically inevitable and a virtual certainty that defendant will be removed or deported from the United States. Defendant may also be denied United States citizenship and admission to the United States in the future. Defendant understands that while there may be arguments that defendant can raise in immigration proceedings to avoid or delay removal, removal is presumptively mandatory and a virtual certainty in this case. Defendant further understands that removal and immigration consequences are the subject of a separate proceeding and that no one, including her attorney or the Court, can predict to an absolute certainty the effect of her conviction on her immigration status. Defendant nevertheless affirms that she wants to plead guilty regardless of any immigration consequences that her plea may entail, even if the consequence is automatic removal from the United States.

<u>FACTUAL BASIS</u>

10. Defendant admits that defendant is, in fact, guilty of the offense to which defendant is agreeing to plead guilty. Defendant and the United States agree to the statement of facts provided below and agree that this statement of facts is sufficient to support a plea of guilty to the charge described in this agreement and to establish the Sentencing Guidelines factors set forth in paragraph 12

1  below but is not meant to be a complete recitation of all facts

2  relevant to the underlying criminal conduct or all facts known to

3  either party that relate to that conduct.

4      At times relevant to this case:

5      Defendant was a practicing dentist licensed by the Dental Board

6  of California.  Defendant operated offices at several locations in

7  Orange County, California.

8      Metropolitan Life Insurance Company operated a Preferred

9  Provider Organization dental plan ("MetLife PPO").  MetLife PPO and

10  other dental insurance plans (collectively, the "Insurance Plans")

11  were health care benefit programs within the meaning of Title 18,

12  United States Code, Section 24(b).  The Insurance Plans operated

13  private and public dental care plans, affecting commerce, under which

14  medical benefits, items, and services were provided to individuals in

15  California, and elsewhere, in exchange for payment.  Moreover, the

16  Insurance Plans reimbursed dental services provides for rendering

17  covered dental care to their beneficiaries.

18      Health care providers that provided services covered by the

19  Insurance Plans were commonly referred to as "providers."

20      Defendant BONIADI was an enrolled provider with certain of the

21  Insurance Plans.

22      The Insurance Plans reimbursed providers only for services that

23  were medically necessary and that the provider had in fact provided.

24      Beginning at least in or around 2011, and continuing until in or

25  around July 2018, in Orange County, within the Central District of

26  California, and elsewhere, defendant BONIADI, together with others,

27  would submit and cause defendant BONIADI's staff to submit claims to

28  the Insurance Plans for dental fillings, when in fact defendant

BONIADI and her staff did not provide such treatments to the respective patients.

Defendant's insurance billing practice, which involved billing less costly procedures as if they were fillings, was the same type of misconduct that had been previously investigated by the Dental Board of California. On or about July 17, 2017, after receiving complaints from an insurance company, the Dental Board of California conducted an interview of Defendant. During the interview, defendant admitted that she had used a resin sealer on patients to restore enamel integrity, and that the treatments were billed to insurance companies as fillings. The Board filed an Accusation against defendant on or about May 7, 2018, accusing defendant of repeated acts of negligence and obtaining fee by fraud or misrepresentation for billing insurance companies using billing codes for filings when the resin sealer was neither indicated nor recommended by the manufacturer as a filling material. The Accusation resulted in a Stipulated Settlement and Disciplinary Order on September 11, 2018.

From the July 17, 2017 interview, until approximately July 15, 2018, when the practice ceased, defendant, together with others, knowingly and willfully executed a scheme and artifice to obtain money from the Insurance Plans by means of material false and fraudulent pretenses, representations, and promises, and the concealment of material facts, in connection with the delivery of and payment for health care benefits and services.

For example, on or about February 21, 2018, in Orange County, within the Central District of California, defendant knowingly and willfully executed the scheme described above by submitting and causing to be submitted to MetLife PPO a fraudulent claim for

1   approximately $1,350 for six fillings supposedly provided to patient

2   W.C., which should not have been billed as fillings.

3       As a result of the scheme, defendant caused at least $142,677.85

4   in actual loss to the Insurance Plans.

5                           SENTENCING FACTORS

6       11.  Defendant understands that in determining defendant's

7   sentence the Court is required to calculate the applicable Sentencing

8   Guidelines range and to consider that range, possible departures

9   under the Sentencing Guidelines, and the other sentencing factors set

10  forth in 18 U.S.C. § 3553(a).  Defendant understands that the

11  Sentencing Guidelines are advisory only, that defendant cannot have

12  any expectation of receiving a sentence within the calculated

13  Sentencing Guidelines range, and that after considering the

14  Sentencing Guidelines and the other § 3553(a) factors, the Court will

15  be free to exercise its discretion to impose any sentence it finds

16  appropriate up to the maximum set by statute for the crime of

17  conviction.

18      12.  Defendant and the United States agree to the following

19  applicable Sentencing Guidelines factors:

20  |      Base Offense Level:              6        U.S.S.G. § 2B1.1(a)(2)

21  |      Amount of Loss:                +8      U.S.S.G. § 2B1.1(b)(1)(E)

22  |      Abuse of Trust:                +2              U.S.S.G. § 3B1.3

23  |      Acceptance of Responsibility:  -3              U.S.S.G. § 3E1.1

24  |      Zero-Point Offender:           -2              U.S.S.G. § 4C1.1[1]

25  _____

26  [1] Based on the information known to the parties, defendant qualifies
    for the Zero-Point Offender adjustment set forth in U.S.S.G. § 4C1.1.
27  The parties understand and agree, however, that their stipulation to
    this adjustment is conditioned on defendant's eligibility for the
28  adjustment based on her lack of scorable criminal history under the
    United States Sentencing Guidelines.  In the event that additional
                                                *(footnote cont'd on next page)*

                                    10

        Total Offense Level            11

The United States will agree to a two-level downward adjustment for
acceptance of responsibility (and, if applicable, move for an
additional one-level downward adjustment under U.S.S.G. § 3E1.1(b))
only if the conditions set forth in paragraph 3 are met and if
defendant has not committed, and refrains from committing, acts
constituting obstruction of justice within the meaning of U.S.S.G.
§ 3C1.1, as discussed below.  Subject to paragraph 26 below,
defendant and the United States agree not to seek, argue, or suggest
in any way, either orally or in writing, that any other specific
offense characteristics, adjustments, or departures relating to the
offense level be imposed.  Defendant agrees, however, that if, after
signing this agreement but prior to sentencing, defendant were to
commit an act, or the United States were to discover a previously
undiscovered act committed by defendant prior to signing this
agreement, which act, in the judgment of the United States,
constituted obstruction of justice within the meaning of U.S.S.G.
§ 3C1.1, the United States would be free to seek the enhancement set
forth in that section and to argue that defendant is not entitled to
a downward adjustment for acceptance of responsibility under U.S.S.G.
§ 3E1.1.

        13.  Defendant understands that there is no agreement as to
defendant's criminal history or criminal history category.

_____

information comes to light demonstrating that defendant has in fact
sustained prior convictions rendering her ineligible, the parties
agree that the government is free to recommend that this Court not
include the adjustment in its calculation of defendant's Total
Offense Level.

14.   Defendant and the United States reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

<u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

15.   Defendant understands that by pleading guilty, defendant gives up the following rights:

a.   The right to persist in a plea of not guilty.

b.   The right to a speedy and public trial by jury.

c.   The right to be represented by counsel -- and if necessary have the Court appoint counsel -- at trial.  Defendant understands, however, that, defendant retains the right to be represented by counsel -- and if necessary have the Court appoint counsel -- at every other stage of the proceeding.

d.   The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

e.   The right to confront and cross-examine witnesses against defendant.

f.   The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

g.   The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

h.   Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

1

WAIVER OF STATUTE OF LIMITATIONS

2     16.  Having been fully advised by defendant's attorney regarding

3 application of the statute of limitations to the offense to which

4 defendant is pleading guilty, defendant hereby knowingly,

5 voluntarily, and intelligently waives, relinquishes, and gives up:

6 (a) any right that defendant might have not to be prosecuted for the

7 offense to which defendant is pleading guilty because of the

8 expiration of the statute of limitations for that offense prior to

9 the filing of the information alleging that offense; and (b) any

10 defense, claim, or argument defendant could raise or assert that

11 prosecution of the offense to which defendant is pleading guilty is

12 barred by the expiration of the applicable statute of limitations,

13 pre-indictment delay, or any speedy trial violation.

14

WAIVER OF APPEAL OF CONVICTION

15     17.  Defendant understands that, with the exception of an appeal

16 based on a claim that defendant's guilty plea was involuntary, by

17 pleading guilty defendant is waiving and giving up any right to

18 appeal defendant's conviction on the offense to which defendant is

19 pleading guilty.  Defendant understands that this waiver includes,

20 but is not limited to, arguments that the statute to which defendant

21 is pleading guilty is unconstitutional, and any and all claims that

22 the statement of facts provided herein is insufficient to support

23 defendant's plea of guilty.

24

LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE

25     18.  Defendant agrees that, provided the Court imposes a term of

26 imprisonment within or below the range corresponding to an offense

27 level of 11 and the criminal history category calculated by the

28 Court, defendant gives up the right to appeal all of the following:

(a) the procedures and calculations used to determine and impose any portion of the sentence; (b) the term of imprisonment imposed by the Court; (c) the fine imposed by the Court, provided it is within the statutory maximum; (d) to the extent permitted by law, the constitutionality or legality of defendant's sentence, provided it is within the statutory maximum; (e) the amount and terms of any restitution order, provided it requires payment of no more than $142,677.85; (f) the term of probation or supervised release imposed by the Court, provided it is within the statutory maximum; and (g) any of the following conditions of probation or supervised release imposed by the Court: the conditions set forth in Second Amended General Order 20-04 of this Court; the drug testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

19.   The United States agrees that, provided (a) all portions of the sentence are at or below the statutory maximum specified above and (b) the Court imposes a term of imprisonment within or above the range corresponding to an offense level of 11 and the criminal history category calculated by the Court, the United States gives up its right to appeal any portion of the sentence, with the exception that the United States reserves the right to appeal the amount of restitution ordered if that amount is less than $142,677.85.

<u>RESULT OF WITHDRAWAL OF GUILTY PLEA</u>

20.   Defendant agrees that if, after entering a guilty plea pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty plea on any basis other than a claim and finding that entry into this plea agreement was involuntary, then (a) the United States will be relieved of all of

its obligations under this agreement; and (b) should the United States choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

<u>RESULT OF VACATUR, REVERSAL, OR SET-ASIDE</u>

21.  Defendant agrees that if the count of conviction is vacated, reversed, or set aside, both the United States and defendant will be released from all their obligations under this agreement.

<u>EFFECTIVE DATE OF AGREEMENT</u>

22.  This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney or United States Department of Justice Assistant Deputy Chief.

<u>BREACH OF AGREEMENT</u>

23.  Defendant agrees that if defendant, at any time after the signature of this agreement and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney or United States Department of Justice Assistant Deputy Chief, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the United States may declare this agreement breached.  All of defendant's obligations are material, a single breach of this agreement is

sufficient for the United States to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the United States in writing. If the United States declares this agreement breached, and the Court finds such a breach to have occurred, then: (a) if defendant has previously entered a guilty plea pursuant to this agreement, defendant will not be able to withdraw the guilty plea, and (b) the United States will be relieved of all its obligations under this agreement.

24. Following the Court's finding of a knowing breach of this agreement by defendant, should the United States choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then:

a. Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

b. Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

c. Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal

1  Procedure, or any other federal rule, that the statements or any
2  evidence derived from the statements should be suppressed or are
3  inadmissible.

4       COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES
5                        OFFICE NOT PARTIES
6       25.  Defendant understands that the Court and the United States
7  Probation and Pretrial Services Office are not parties to this
8  agreement and need not accept any of the United States' sentencing
9  recommendations or the parties' agreements to facts or sentencing
10 factors.
11      26.  Defendant understands that both defendant and the United
12 States are free to: (a) supplement the facts by supplying relevant
13 information to the United States Probation and Pretrial Services
14 Office and the Court, (b) correct any and all factual misstatements
15 relating to the Court's Sentencing Guidelines calculations and
16 determination of sentence, and (c) argue on appeal and collateral
17 review that the Court's Sentencing Guidelines calculations and the
18 sentence it chooses to impose are not error, although each party
19 agrees to maintain its view that the calculations in paragraph 12 are
20 consistent with the facts of this case.  While this paragraph permits
21 both the United States and defendant to submit full and complete
22 factual information to the United States Probation and Pretrial
23 Services Office and the Court, even if that factual information may
24 be viewed as inconsistent with the facts agreed to in this agreement,
25 this paragraph does not affect defendant's and the United States'
26 obligations not to contest the facts agreed to in this agreement.
27      27.  Defendant understands that even if the Court ignores any
28 sentencing recommendation, finds facts or reaches conclusions

                                17

different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty plea, and defendant will remain bound to fulfill all defendant's obligations under this agreement.  Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

NO ADDITIONAL AGREEMENTS

28.  Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the United States and defendant or defendant's attorney, and that no additional promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

///

PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

29.  The parties agree that this agreement will be considered part of the record of defendant's guilty plea hearing as if the entire agreement had been read into the record of the proceeding.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF
CALIFORNIA

E. MARTIN ESTRADA
United States Attorney

*Benjamin Barron*                          5-24-2024
_____          _____
BENJAMIN R. BARRON                          Date
Assistant United States Attorney
NIALL M. O'DONNELL
Assistant Deputy Chief
U.S. Department of Justice
Criminal Division, Fraud Section

_____          5-15-2024
MONICA BONIADI                              Date
Defendant

_____          5/15/2024
GARY BRUCKER                                Date
JESSICA MACKANESS
Attorneys for Defendant Monica
Boniadi

CERTIFICATION OF DEFENDANT

I have read this agreement in its entirety.  I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney.  I understand the terms of this agreement, and I voluntarily agree to those terms.  I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be

filed, of possible defenses that might be asserted either prior to or
at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a),
of relevant Sentencing Guidelines provisions, and of the consequences
of entering into this agreement.  No promises, inducements, or
representations of any kind have been made to me other than those
contained in this agreement.  No one has threatened or forced me in
any way to enter into this agreement.  I am satisfied with the
representation of my attorney in this matter, and I am pleading
guilty because I am guilty of the charge and wish to take advantage
of the promises set forth in this agreement, and not for any other
reason.

_____              5-75-2024
MONICA BONIADI                                Date
Defendant


                    CERTIFICATION OF DEFENDANT'S ATTORNEY

        I am MONICA BONIADI's attorney.  I have carefully and thoroughly
discussed every part of this agreement with my client.  Further, I
have fully advised my client of her rights, of possible pretrial
motions that might be filed, of possible defenses that might be
asserted either prior to or at trial, of the sentencing factors set
forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines
provisions, and of the consequences of entering into this agreement.
To my knowledge: no promises, inducements, or representations of any
kind have been made to my client other than those contained in this
agreement; no one has threatened or forced my client in any way to
enter into this agreement; my client's decision to enter into this
agreement is an informed and voluntary one; and the factual basis set

                                    20

forth in this agreement is sufficient to support my client's entry of
a guilty plea pursuant to this agreement.

_____          5/15/2024
                                          _____
GARY BRUCKER                              Date
JESSICA MACKANESS
Attorney for Defendant Monica
Boniadi

1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9              FOR THE CENTRAL DISTRICT OF CALIFORNIA

10   UNITED STATES OF AMERICA,          No.

11          Plaintiff,                  I N F O R M A T I O N

12             v.                       [18 U.S.C. § 1347: Health Care
                                        Fraud]
13   MONICA BONIADI,

14          Defendant.

15

16      The United States Attorney charges:

17                    [18 U.S.C. § 1347]

18   A.   INTRODUCTORY ALLEGATIONS

19      At times relevant to this Information:

20      1.   Defendant MONICA BONIADI was a practicing dentist licensed

21   by the Dental Board of California.  Defendant BONIADI operated

22   offices at several locations in Orange County, California.

23      2.   Metropolitan Life Insurance Company operated a Preferred

24   Provider Organization dental plan ("MetLife PPO").  MetLife PPO and

25   other dental insurance plans (collectively, the "Insurance Plans")

26   were health care benefit programs within the meaning of Title 18,

27   United States Code, Section 24(b).  The Insurance Plans operated

28   private and public dental care plans, affecting commerce, under which

                          EXHIBIT A

medical benefits, items, and services were provided to individuals in California, and elsewhere, in exchange for payment.  Moreover, the Insurance Plans reimbursed dental services providers for rendering covered dental care to their beneficiaries.

3.   Health care providers that provided services covered by the Insurance Plans were commonly referred to as "providers."

4.   Defendant BONIADI was an enrolled provider with certain of the Insurance Plans.

5.   The Insurance Plans reimbursed providers only for services that were medically necessary and that the provider had in fact provided.

B.   THE SCHEME TO DEFRAUD

6.   Beginning at least in or around 2011, and continuing until in or around July 2018, in Orange County, within the Central District of California, and elsewhere, defendant BONIADI, together with others known and unknown to the United States Attorney, knowingly, willfully, and with the intent to defraud, executed a scheme and artifice: (a) to defraud the Insurance Plans, including MetLife Safeguard, as to material matters in connection with the delivery of and payment for health care benefits and services; and (b) to obtain money from the Insurance Plans by means of material false and fraudulent pretenses, representations, and promises, and the concealment of material facts, in connection with the delivery of and payment for health care benefits and services.

C.   MANNER AND MEANS USED TO ACCOMPLISH THE SCHEME TO DEFRAUD

7.   The fraudulent scheme operated, in substance as follows:

a.   Defendant BONIADI would submit and cause her staff to submit claims to the Insurance Plans for dental fillings, which in

EXHIBIT A

1  fact defendant and her staff did not provide to the respective

2  patients.

3       b.   Rather, defendant BONIADI provided the respective

4  patients with resin sealer treatments, which, as defendant knew,

5  should have been billed under different codes resulting in lower

6  reimbursements by the Insurance Plans.

7       8.   As a result of the fraud scheme, defendant caused at least

8  $142,677.85 in actual loss to the Insurance Plans.

9  D.   EXECUTION OF THE FRAUDULENT SCHEME

10       9.   On or about February 21, 2018, in Orange County, within the

11  Central District of California, and elsewhere, defendant BONIADI,

12  together with others known and unknown to the United States Attorney,

13  knowingly and willfully executed the fraudulent scheme described

14  above by submitting and causing to be submitted to MetLife PPO a

15  fraudulent claim in the amount of approximately $1,350 for six

16  fillings purportedly provided to patient W.C.

17

18                          E. MARTIN ESTRADA
                            United States Attorney
19

20

21  MACK E. JENKINS
    Assistant United States Attorney
22  Chief, Criminal Division

23  BENJAMIN R. BARRON
    Assistant United States Attorney
    Chief, Santa Ana Branch Office
24

25  NIALL M. O'DONNELL
    Assistant Chief, Fraud Section
26  U.S. Department of Justice

27

28

3

EXHIBIT A